IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BRYAN D. WHITE and DEBRA BRECKENRIDGE,<br><br>        Plaintiffs,<br><br>  vs.<br><br>JOSEPH MAURIER as agent of the State of Montana Fish Wildlife and Parks, RICK SCHMAUCH, individually and as the agent of State of Montana Fish Wildlife and Parks, DANIEL MULKEY, individually and as agent of State of Montana Beaverhead County Sheriffs Department, SCOTT KESSEL, individually and as agent of State of Montana Beaverhead County Sheriffs Department, JAY HANSEN, individually and as the agent and Sheriff of Beaverhead County, BEAVERHEAD COUNTY, a political subdivision of the State of Montana, and JOHN DOES I-X,<br><br>        Defendants. | CV 13–33–BU–DLC<br><br><br>ORDER |

Plaintiffs Bryan D. White ("White") and Debra Breckenridge

("Breckenridge") filed this action against Defendants, state and local officials and

the political subdivision of Beaverhead County, Montana, seeking damages for

1

alleged wrongful conduct arising out of White's receipt of two citations for waste of big game animals. The citations were issued by Defendant Rick Schmauch ("Schmauch"), a game warden for Montana Fish Wildlife and Parks, who was accompanied at the time by Defendant Daniel Mulkey ("Mulkey"), a Beaverhead County Deputy Sheriff. Jurisdiction is based on 42 U.S.C. § 1983 and 28 U.S.C. § 1367. Before the Court are Defendants' motions for summary judgment. For the reasons explained below, the motions will be granted.

## I. FACTUAL BACKGROUND

On November 20, 2010, White took possession of a cow elk carcass and the next day he shot a mule deer. He stored the two carcasses outside on a flatbed truck on his property in Lima, Montana, until December 15, 2010, when authorities cited White for waste of game and confiscated the carcasses.

Deputy Mulkey had received citizen complaints about the carcasses, including a complaint from the mayor of Lima. Around December 7, 2010, Mulkey observed cats and birds eating on the carcasses. On December 13, 2010, Mulkey contacted Montana Department of Fish Wildlife and Parks Game Warden Rick Schmauch to inform him of the citizen complaints regarding the carcasses.

On December 14, 2010, Schmauch travelled to Lima and observed the carcasses from a public alley adjacent to White's property. The animals were laid

on top of a flat bed truck and exposed to the elements. Schmauch took

photographs of the carcasses. Schmauch showed the photos of the carcasses to a

local meat processor who expressed concern regarding the carcasses' fitness for

human consumption. Schmauch then met with his supervisor concerning the

carcasses who concurred that the deer and elk appeared to be in a state of waste.

Schmauch then met with Beaverhead County Attorney Jed Fitch to explain the

situation. Schmauch showed Fitch the photos of the carcasses. Fitch agreed that

probable cause existed to issue White citations for waste of game and asked

Schmauch to issue the citations. Fitch presumed the carcasses would be seized.

On December 15, 2010, Schmauch and Mulkey traveled to White's house,

knocked on his door and asked White to answer some questions about the

carcasses. White alleges that the officers peered into the interior of his house after

he opened the door. It is undisputed that neither officer ever entered White's

house. After some discussion, Schmauch informed White that he was going to cite

White for waste of game and seize the carcasses. White agreed to move his truck

in order to assist the officers in accessing the carcasses. White then returned into

his house and obtained a video camera to tape the encounter. Outside, Schmauch

took more photos of the carcasses. Before Schmauch loaded the carcasses onto his

truck, White retrieved a loaded foothold trap from inside the cavity of the elk

carcass.

Schmauch then issued White two citations for waste of game. After completing the paperwork, Schmauch held the citations out to White. White attempted to grab the citations away from Schmauch, but Schmauch held onto them. White began to walk away. Schmauch then allegedly briefly grabbed White's shoulder, told White to "chill out," and told White that he had to explain the citations to White. The time between Schmauch allegedly grabbing White's shoulder and the officers leaving the premises was between time 23 and 40 seconds.

The next day, December 16, 2010, Schmauch wrote a report concerning the incident and presented the report to the Beaverhead County Justice Court for filing. White was arraigned in Beaverhead County Justice Court on January 4, 2011. The Beaverhead County Attorney's office determined there was probable cause to prosecute White for waste of game. In June 2011, White was tried on both charges and a jury found him not guilty. Post-trial, White moved the Justice Court to return the animal carcasses. The Justice Court denied the motion and White did not appeal the order.

Out of this set of undisputed facts, White brings the following claims: (1) False Arrest and False Imprisonment, (2) Malicious Prosecution, (3) Civil Rights

Violations Under the U.S. Constitution, (4) Civil Rights Violations Under the Montana Constitution, (5) Negligence and Gross Negligence, (6) Negligence Per Se, (7) Emotional Distress, (8) Acting in Concert, (9) Punitive Damages, and (10) Defamation.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

# III. ANALYSIS

## A.      False Arrest/False Imprisonment

Defendants move for summary judgment on White's false arrest and false imprisonment claim. Defendants assert that no arrest occurred and, even if one did occur, that the officers had probable cause for the arrest.

"[T]here are two components of a claim for false imprisonment: the restraint of an individual against his will, and the unlawfulness of the restraint." *Kichnet v. Butte-Silver Bow County*, 274 P.3d 740, 745 (Mont. 2012). "It is well-settled that a court's determination of probable cause is a complete defense to a claim of false arrest or imprisonment leveled against the charging party." *Id.*

The undisputed facts demonstrate that White was not falsely arrested or imprisoned. The basis of White's false imprisonment claim is that Schmauch briefly grabbed White's shoulder and then instructed him to remain in his presence while he explained to White the citations for waste of game. The time between the alleged touching of White's shoulder and his "release" was no more than 40 seconds. Even if this were enough to constitute an arrest, *see Gonzalez v. City of Bozeman*, 217 P.3d 487, 493-94 (suggesting otherwise), because the officers possessed probable cause to issue citations to White for waste of game, Plaintiffs' claim for false arrest fails. *Kitchnet v. Butte-Silver Bow County*, 274 P.3d 740,

745 (Mont. 2012).

Probable cause exists "where the facts and circumstances within an officer's personal knowledge prove sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *State v. Kelm*, 300 P.3d 687, 693 (Mont. 2013). When determining probable cause, authorities "may rely on hearsay and other evidence that would not be admissible in a court." *Hart v. Parks*, 450 F.3d 10589, 1066 (9th Cir. 2006). Here, the officers reasonably believed that White had committed the offense of waste of game. White stored the carcasses outside on his flatbed truck for approximately 25 days. Neighbors and other citizens of Lima had complained about the carcasses. White admits that the carcasses were "chewed on" by unknown animals while in his possession. (Doc. 38-1 at 2.) Officer Mulkey had previously observed cats and birds feeding on the carcasses and relayed this information to Schmauch. Schmauch had photographed the carcasses and shown the photos to a local meat processor who expressed concern about their fitness for human consumption. Schmauch had also spoken with his supervisor and the county attorney who stated that probable cause existed for issuance of citations for waste of game. Inside the cavity of the elk carcass was a loaded foothold trap. The undisputed facts demonstrate the existence of probable cause for the issuance of the waste of game citations and reasonable

minds concerning this issue cannot differ.  Accordingly, White's claims for false

arrest and false imprisonment fail because the existence of probable cause is a

complete defense to a claim for false imprisonment.  *Kichnet*, 274 P.3d at 745.

In addition, Montana imposes a two-year statute of limitations on false

arrest claims.  Mont. Code Ann. § 27-2-204(3).  White's claims for false arrest and

false imprisonment are based upon his interaction with Schmauch that occurred on

December 15, 2010.  White did not file his initial complaint until April 19, 2013.

Thus, Schmuach's claims for false arrest and false imprisonment are barred by the

applicable statute of limitation.

## B.     Malicious Prosecution

Defendants move for summary judgment on Plaintiffs' claim for malicious

prosecution.  Defendants contend that Plaintiffs' claim for malicious prosecution

fails because the officers had probable cause to issue the citations for waste of

game and also because Plaintiffs lack any evidence that White's prosecution was

motivated by malice.

To prevail on a claim of malicious prosecution requires a plaintiff to prove

the following essential elements:  (1) a judicial proceeding was commenced and

prosecuted against the plaintiff; (2) the defendant was responsible for instigating,

prosecuting or continuing such proceeding; (3) there was a lack of probable cause

for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for plaintiff; and (6) the plaintiff suffered damage. *Blacktail Mountain Ranch, Co., L.L.C. v. State, Dept. of Nat. Resources and Conserv.*, 220 P.3d 388, 390 (Mont. 2009). Because, as explained above, the officers had probable cause, Plaintiffs' malicious prosecution claim fails.

## C.     Civil Rights Violations under the U.S. Constitution

Defendants move for summary judgment on all of Plaintiffs' § 1983 claims. Defendants assert that they are entitled to qualified immunity. Alternatively, Defendants assert that all of Plaintiffs' claims fail as a matter of law because Plaintiffs lack evidence sufficient to support any § 1983 claims, and/or the claims are barred by the existence of probable cause.

White's claims here are manifold. White alleges Fourth Amendment violations for illegal search and seizure, and Fourteenth Amendment violations of due process and equal protection.

### Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*, 131 S.Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### 1.    Search

Plaintiffs' amended complaint alleges that Schmauch and/or Mulkey peered into his house looking for incriminating evidence after he opened the door.  This claim fails even as alleged.  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. U.S.*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967).  Peering into an opened doorway does not violate a reasonable expectation of privacy.  Anything that the officers saw inside the house after White opened the door was in plain view and Plaintiffs had no reasonable expectation of privacy in things open to the officers' view after White opened the door.  Accordingly, Plaintiffs' claim based on the officers' conduct of looking inside his opened doorway fails.

Plaintiffs attempt to change their illegal search theory on summary judgment by alleging that Schmauch conducted an illegal search on December 14, 2011, by

trespassing onto White's property to observe and photograph the carcasses. No allegation of this sort appears in Plaintiffs' amended complaint. "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs. Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock &Co.*, 922 F.2d 20, 24 (1st Cir. 1990)). "[N]ecessary factual averments are required with respect to each material element of the underlying legal theory." *Id.* Plaintiffs' claim for illegal search based on Schmauch's alleged conduct on December 14, 2010 fails because it was not adequately pled. Moreover, Plaintiffs lack any evidence that supports the claim or rebuts the sworn affidavit of Officer Schmauch. Mr. White's "strong sense" that Schmuach must have trespassed on December 14, 2010, is not evidence sufficient to survive summary judgment. (Doc. 62-1 at 1.) Accordingly, Plaintiffs' claim based on allegations that Schmauch committed an illegal search on December 14, 2011, is dismissed because Plaintiffs did not plead any factual averments to support such a claim and Plaintiffs lack sufficient evidence to support the claim.

## 2.    Seizure

Plaintiffs allege constitutional violations based on the "seizure" of White's person and the seizure of the carcasses.

"If an officer has probable cause to believe that an individual has committed

11

even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

To the extent Plaintiffs assert constitutional violations based on the seizure of White's person, this claim fails because, as explained above, the officers had probable cause to believe that White had committed the offense of waste of game. The seizure of White's person, to the extent there was one, was reasonable and did not constitute a clear violation of the Fourth Amendment. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' § 1983 claim based on the seizure of White's person.

Plaintiffs' claim based on illegal seizure of the carcasses also fails. The officers had probable cause to believe that White possessed the carcasses in violation of the law. Montana Code Annotated § 87-1-506(1)(d) authorizes a game warden to "seize game . . . possessed in violation of the law or the rules of the department." Schmauch and Mulkey were lawfully on White's property at the time of the seizure. Indeed, White assisted the officers in accessing the carcasses by moving his truck into a position so that the carcasses could be seized. The seizure of the carcasses was not unreasonable under the circumstances and the officers did not violate a clearly established constitutional right in seizing

carcasses that the officers reasonably believed were possessed in violation of the law. *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011) (noting that "the ultimate touchstone of the Fourth Amendment is 'reasonableness'").

In addition, the carcasses, lying on a flatbed truck open to public view by two adjacent public roads, were in plain view and the officers were authorized to seize them under the plain view doctrine. "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133 (1990)(citing *Arizona v. Hicks*, 480 U.S. 321, 325 (1987)). "[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *King*, 131 S.Ct. at 1858. The seizure of the carcasses in plain view did not violate any constitutional right and Defendants are entitled to summary judgment on this claim.

### 3. Equal Protection

Plaintiffs' claim for violation of the Fourteenth Amendment's equal protection clause is based on his allegation that the officers "profiled" and "targeted" White. (Doc. 52 at 24.) Plaintiffs support this allegation by reference to previous occasions (dating back to 2005) in which Plaintiffs apparently complained to law enforcement officials about various incidents which, Plaintiffs

allege, were then not adequately followed up on by law enforcement.  It is undisputed that prior to the citations for waste of game Plaintiffs have never been issued any citation by any Defendant.

Defendants are entitled to summary judgment on Plaintiffs' § 1983 equal protection claim.  First, Plaintiffs cite no authority for their legal theory that a government official's failure to adequately investigate and/or prosecute a smattering of past crimes constitutes an equal protection violation.  Established law suggests that no constitutional claim lies on such a theory.  *DeShaney v. Winnebago County Dept. of Social Serv.*, 489 U.S. 189 (1989) (holding that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests").  Furthermore, other than conclusory allegations, Plaintiffs fail to provide any specific evidence that the prior incidents actually occurred as alleged or that the alleged incidents were handled improperly by any of the Defendants, much less any evidence demonstrating that the past incidents were handled improperly because the officers were "profiling" or "targeting" Plaintiffs. Plaintiffs also fail to create any genuine dispute that the officers' issuance of the waste of game citations were part of a scheme of targeting and "profiling" Plaintiffs.

Plaintiffs' conclusory allegations about the various past incidents are insufficient to create a genuine dispute. Plaintiffs' equal protection claim fails.[1]

## 4. Due Process

Plaintiffs' claim for violation of due process fails. First, even at the summary judgment stage, it is not clear to the Court what alleged conduct forms the basis of Plaintiffs' claim for due process violations. As already established, the undisputed facts demonstrate that the officers had probable cause to believe that White had committed a crime. The undisputed facts demonstrate that the officers did not conduct an illegal search or seizure, or violate the equal protection clause of the Fourteenth Amendment. Likewise, Plaintiffs cannot demonstrate that any supervisory officials failed to adequately train or supervise because Plaintiffs have not demonstrated any violations of constitutional rights by the supervisors' subordinates. Plaintiffs' claim for due process violations accordingly fails.

## D. Montana Constitutional Claims

Defendants move for summary judgment on all of Plaintiffs' claims based

---

[1] The Court notes that Deputy Scott Kessel was added as a Defendant in Plaintiffs' amended complaint. There are no allegations, however, that Deputy Kessel participated in any of the complained-of events on December 14th or 15th, 2010. Kessel's alleged conduct relates to past incidents that Plaintiffs allege were not adequately investigated. These allegations are apparently meant to support Plaintiffs' equal protection, due process, and Montana constitutional claims, but Plaintiffs make no specific mention of Kessel in any of the summary judgment briefs. For the reasons explained herein, any claims against Kessel are dismissed.

on violations of the Montana Constitution. Defendants contend that Plaintiffs'
Montana constitutional claims are duplicative of Plaintiffs' claims based on the
United States Constitution and should be dismissed for the reasons already
explained. In addition, Defendants contend that to the extent that Plaintiffs'
claims are not precisely duplicative of the federal claims, Plaintiffs are
impermissibly asserting claims for which there exists an adequate remedy under
state common law tort theories and/or asserting claims based on provisions of the
Montana constitution that are not "self-executing." (Doc. 44 at 27.)

In general, Plaintiffs claims under the Montana constitution, for malicious
prosecution, search, seizure, and equal protection, are indeed duplicative of their
federal claims, and fail for the reasons explained above. In summary, the
malicious prosecution claim, search, and seizure claims fail because of the
existence of probable cause. In addition, when "adequate remedies exist under
statutory or common law," no constitutional tort claim lies. *Sunburst School Dist.
No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1093 (Mont. 2007). Likewise, Plaintiffs'
equal protection claim based on "profiling" is not cognizable. Plaintiffs make no
effort to demonstrate that they can meet the elements for such a claim, and the
claim fails for lack of sufficient evidence.

Other than these duplicative claims, Plaintiffs contend that Breckenridge's

right to privacy and dignity were violated when Mulkey failed to prosecute an unidentified peeping tom. The peeping incident allegedly occurred at some unknown time in the past. Plaintiffs fail to demonstrate how it was Mulkey's, or any other Defendant's, duty to prosecute this alleged, unidentified peeping tom, or how, Mulkey or any of the other Defendants, violated Breckenridge's dignity. Plaintiffs simply make the bald, conclusory assertion, unsupported by any citation to any legal authority, that this conduct constitutes a violation of the right to dignity under the Montana Constitution. This mere allegation is insufficient to survive summary judgment. Accordingly, Defendants are entitled to summary judgment on all of Plaintiffs' Montana constitutional claims.

## E. Negligence and gross negligence

Defendants move for summary judgment on White's negligence claims. Defendants assert that Plaintiffs' negligence claims are barred by the public duty doctrine. Defendants further assert that there is no cognizable claim for negligent investigation. Plaintiffs counter that the public duty doctrine does not apply because White was in actual custody.

A claim for negligence requires the plaintiff to prove that the defendant owed the plaintiff a legal duty. *Peterson v. Eichhorn*, 189 P.3d 615, 620-621 (Mont. 2008). Whether a legal duty exists is a question of law. *Slack v. Landmark*

17

*Co.*, 27 P.3d 6, 10 (Mont. 2011).  The public duty doctrine provides that "a law

enforcement officer has no duty to protect a particular person absent a special

relationship because the officer's duty to protect and preserve the peace is owed to

the public at large and not to individual members of the public." *Gonzalez v. City

of Bozeman*, 217 P.3d 487, 491 (Mont. 2009) (citing *Nelson v. Driscoll*, 983 P.2d

972 (Mont. 1999); *Eves v. Anaconda-Deer Lodge County*, 114 P.3d 1037 (Mont.

2005).  A special relationship exists "under certain circumstances, when the

agency has actual custody of the plaintiff."  *Nelson*, 983 P.2d 972, 978.

Defendants are entitled to summary judgment on all of Plaintiffs'

negligence claims because the claims are barred by the public duty doctrine.  The

undisputed facts demonstrate that White was never in "actual custody" of any of

the Defendants.  At most, White was briefly detained (for a period of

approximately 30 seconds) so that Schmauch could explain to White the citations

for waste of game.  The Court cannot locate, and Plaintiffs do not cite, any

authority suggesting that this brief detention for the purpose of explaining a

citation, is sufficient to establish that White was in "actual custody" as required to

establish a special relationship and an exception to the public duty doctrine.  The

undisputed facts demonstrate that White was never in actual custody.

Accordingly, the public duty doctrine applies, the officers owed no duty to White

other than the duty owed to the public at large, and all of Plaintiffs' general negligence claims fail.

**F.      Negligence per se**

Defendants move for summary judgment on all of Plaintiffs' negligence per se claims.  Plaintiffs' claims of negligence per se are premised on violations of six Montana statutes:

(1) § 87-1-502(6) (granting game wardens the authority to inspect game "at reasonable times and at any location other than a residence or dwelling");

(2) § 87-1-506(1)(c) (granting game wardens the power to "search, with a search warrant, any dwelling house or other building");

(3) § 87-1-513 (stating that money obtained from the sale of seized property in association with a game violation must be paid to the party from whom the property was taken if the person is subsequently found not guilty of the charge);

 (4)  § 45-7-207 (criminal tampering with or fabricating physical evidence);

(5)  § 45-6-301 (criminal theft);

(6)  § 45-7-202 (criminal false swearing).

Defendants contend that none of these statutes were violated and furthermore that none of these statutes are intended to regulate law enforcement officers for the protection of persons such as Plaintiffs.

In order to prevail on a claim of negligence per se a plaintiff must establish: (1) that a defendant violated a particular statute; (2) that the violated statute was enacted to protect a specific class of persons; (3) that the plaintiff is a member of the class; (4) that the plaintiff's injury is the kind of injury that the statute was enacted to prevent; and (5) that the statute was intended to regulate members of the defendant's class. *Doyle v. Clark*, 254 P.3d 570, 576-77 (Mont. 2011). A plaintiff must also establish that the "statute allegedly violated allows a private right of action." *Id.* 254 P.3d at 577.

Plaintiffs do not address how they intend to meet all of the required elements for each of their claims for negligence per se. Plaintiffs contend that the officers did not have probable cause, but the Court has already rejected this position. Otherwise, Plaintiffs make only the arguments addressed below.

Plaintiffs contend that the flatbed truck on which the carcasses were laid was within Plaintiff's dwelling's curtilage. This apparently is meant to support Plaintiffs' claim that the officers searched White's home in violation of Montana Code Annotated § 87-1-502(6). Putting aside the fact that the statute makes no mention of a home's curtilage, Plaintiffs make no showing that § 87-1-502 creates a private right of action or that the statute was enacted to protect people such as Plaintiffs. Furthermore, Plaintiffs' contention that the flatbed truck was within the

curtilage of White's house is conclusory and unsupported by the undisputed facts. The flatbed truck was located away from Plaintiffs home in a yard open to public view from two adjacent public streets.

To the extent Plaintiffs assert violations of § 45-6-301 (theft), Plaintiffs make no showing that this criminal statute creates a private right of action or that it was enacted to protect people such as Plaintiffs from the conduct of law enforcement officers. In any case, the officers were statutorily authorized to seize the carcasses which they had probable cause to believe were possessed in violation of the law. Mont. Code Ann. § 87-1-506(d).

With respect to the tampering and false statements, §§ 45-7-207 and 45-7-202, Plaintiffs again fail to make any showing that these criminal statutes create a private right of action, that the statutes were intended to regulate law enforcement, or that White is a member of a class that the statutes were enacted to protect. Plaintiffs state, without citation to any legal authority, that these statutes "set the standard of conduct" for law enforcement. (Doc. 52 at 29.) This conclusory allegation, without reference to any legal authority, or further elaboration, is insufficient to survive summary judgment.

Defendants are entitled to summary judgment on all of Plaintiffs' negligence per se claims.

## G.    Emotional Distress

Defendants move for summary judgment on Plaintiffs' independent claim for emotional distress.  Defendants contend that the public duty doctrine bars Plaintiffs' emotional distress claim.  Defendants also assert that Plaintiffs' claim fails for lack of sufficient evidence.

A cause of action for negligent infliction of emotional distress arises only where serious or severe emotional distress was the reasonably foreseeable consequence of a defendant's negligent actions.  *Sacco v. High Country Ind. Press, Inc.*, 896 P.2d 411, 425 (Mont. 1995).

Plaintiffs assert in conclusory fashion that White suffered severe emotional distress from having to take time off work to prepare for his trial on the waste of game citations and from losing the meat he planned to eat from the carcasses. Serious or severe emotional distress can not be regarded as the reasonably foreseeable consequence of issuing citations for waste of game and seizing carcasses that are apparently rotting.  Moreover, the public duty doctrine bars this claim because White was never in "actual custody."

## H.    Defamation

Defendants move for summary judgment on Plaintiffs' defamation claim. Defendants assert that there is no evidence of any false publication and that any

statements the Defendants made in the proper discharge of their duties is privileged under Montana Code Annotated § 27-1-804. Defendants further assert that any claim of defamation based on false statements in Schmauch's incident report is time barred.

Plaintiffs concede that a defamation claim based on alleged falsehoods in the incident report is time barred. Plaintiffs only contention is that "it is uncontradicted that [White's] charges were published in the local paper." (Doc. 52 at 30-31.) Plaintiffs make no other effort to establish their claim for defamation. Critically, Plaintiffs make no effort to demonstrate that the newspaper publication concerning the charges against White was false. A claim for libel requires a false publication. Mont. Code Ann. § 27-1-802. Plaintiffs offer no evidence of this essential element. Accordingly, Defendants are entitled to summary judgment on White's claim for defamation.

## I.    Punitive Damages and Acting in Concert

Defendants contend they are entitled to summary judgment on Plaintiffs' claims for punitive damages and acting in concert because these claims are dependent on establishing liability on some other count. The Court agrees that Plaintiffs' claims here are dependent on establishing liability under one of Plaintiffs' other counts. *Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48, 55

(Mont. 1984); *Peschel v. City of Missoula*, 664 F.Supp.2d 1149, 1173 (D.Mont. 2009). Accordingly, Defendants are entitled to summary judgment on these counts.

**J.     Attorney's Fees**

Defendant Mulkey moves the Court for attorney fees for having to defend against Plaintiffs' claims against him in his individual capacity contending that attorney fees are appropriate when a Plaintiff is on notice that claims against a government official in his individual capacity will fail as a result Montana Code Annotated § 2-9-305(5). Mulkey cites one case in which attorney fees were awarded when the Court determined that a defendant clearly enjoyed immunity from the plaintiff's state law claims pursuant to § 2-9-305(5). *Germann v. Stephens*, 137 P.3d 545, 553-54 (Mont. 2006). Defendants Beaverhead County and Hansen also move the Court for attorney fees, but state no specific reason why attorney fees should be granted. The Court will not depart from the American Rule regarding attorney's fees and denies Defendants' motion for attorney's fees.

C<span style="font-variant:small-caps">ONCLUSION</span>

In closing, the Court notes two features of this case. First, Plaintiffs' filings in this case have consistently violated the Court's Local Rules. All motions and other papers must be filed with *one-inch* margins and the pages should be

numbered.  L.R. 1.5(a).  Citations should adhere to the rules provided by Bluebook or ALWD.  *Id.*  All briefs must be filed with a certificate of compliance.  L.R. 7.1(d)(2)(E).  Exhibits should be filed in manner that allows the Court and the parties to locate easily and refer unambiguously to a specific page of a specific exhibit.  L.R. 7.2(a).  Filing a group of exhibits instead of filing each exhibit as a separate document is inconsistent with this rule.  All exhibits filed should be "germane" to the issues in dispute.  L.R. 7.2(b).  The statement of disputed facts (not a "Statement of Genuine Issues") should set forth each *fact* on which the party relies to oppose the motion.  L.R. 56.1(b).  Each fact should be supported by a *specific* document in the record.  *Id.*  There is a difference between an argument, or a party's position, and a fact.  Plaintiffs' counsel must learn to distinguish between *facts* that are appropriate for a statement of disputed facts and arguments, which are appropriate for briefs.

The Court also openly wonders about Plaintiffs' counsel's performance of due diligence, initial research, and proper inquiry before filing this 10-count action against government officials and a political subdivision.  The law with respect to many of Plaintiffs' claims is well established and contrary to Plaintiffs' claims.  The Court believes that the performance of some initial research and investigation into these claims may have resulted in a determination that the claims were likely

not warranted by existing law, or that evidentiary support for the claims was lacking.

IT IS ORDERED that Defendants' motions for summary judgment (Docs. 35, 36, 37, & 42) are GRANTED. Judgment shall be entered in favor of all Defendants.

IT IS FURTHER ORDERED that all pending motions are DENIED AS MOOT and this case is CLOSED.

DATED this 18th day of March, 2014.


Dana L. Christensen, Chief District Judge
United States District Court